# Supreme Tent of the Knights of the Maccabees v. Addie Hammers.

1. BENEFICIARY ASSOCIATIONS—*Beneficiaries Bound by the Member's Contract.*—Where a member of a mutual benefit association contracts in joining it that he and his beneficiary shall be bound by the by-laws of the order subsequently enacted, and will conform to all such by-laws, and that the same shall enter into and be a part of his contract, such contract is wholly within the control of the member, and his beneficiary is subject to every stipulation of the same.

2. SAME—*Contracts Subject to Future Legislation of the Order.*— A contract whereby a member of a beneficiary association agrees to be subject to the future general legislation of his order, is valid, and not contrary to public policy, and the member and his beneficiary are bound by subsequent enactments and new laws, provided they are reasonable.

3. Same—*What is a Reasonable By-law.*—A beneficiary association, a company insuring lives, may make such restrictions upon its liability to avoid extra hazards as experience shows to be necessary; so a by-law restricting or entirely excluding liability for death by self-destruction, is reasonable.

4. Tender—*Where the Money is Not Brought into Court.*—Where a tender is not brought into court, a plea of tender authorizes a judgment for the plaintiff for the amount of the tender.

Assumpsit, on a benefit of a fraternal association. Trial in the Circuit Court of Kane County; the Hon. George W. Brown, Judge, presiding. Finding and judgment for plaintiff; appeal by defendant. Heard in this court at the December term, 1898. Reversed and remanded with directions. Opinion filed April 11, 1899.

H. H. C. Miller, attorney for appellant; D. D. Aitkin, of counsel.

The contract between a member of a fraternal benefit society and such society is, in several important respects, different in its nature from an ordinary life insurance policy.

First. A member of such a society has no property rights in the benefit promised to be paid. He has simply the power to designate a beneficiary. Masonic Ben. Ass'n v. Bunch, 109 Mo. 560, 19 S. W. Rep. 25; Keener v. Grand Lodge, 38 Mo. App. 543; Lysaght v. Stone Masons, etc., 55 Mo. App. 538.

Second. The beneficiary has no vested interest in the benefit certificate issued by such a society. Bacon on Benefit Societies (2d Ed.), Sec. 366; Niblack on Benefit Societies (2d Ed.), Sec. 212; Bagley v. Grand Lodge A. O. U. W., 131 Ill. 498; Delaney v. Delaney, 175 Ill. 187.

Third. An ordinary life policy contains the whole contract of insurance, but the certificate of membership in a mutual benefit society is only a part of the written evidence of the contract. In such a society the charter, the constitution and the laws in force at the time of the admission of the member, as well as the laws thereafter enacted, are the terms of and executory contract to which he assents when he enters the order, and are, therefore, a part of the contract of membership, evidenced by the certificate of

membership, whether they are referred to in such certificate
or not.    Niblack on Benefit Societies, 272; Hutchin-
son v. Supreme Tent of the Maccabees, 22 N. Y. Supp. 801;
Lorscher v. Supreme Lodge, 72 Mich. 316, 40 N. W. Rep.
545; Royal Templars v. Curd, 111 Ill. 284–286; Railway
Conductors' B. Ass'n v. Robinson, 147 Ill. 138.

Whatever rights plaintiff has, depend upon the contract
between her husband, Albert A. Hammers, and the defend-
ant order.    Delaney v. Delaney, 175 Ill. 195.

It follows as a necessary corollary from the doctrine that
the contract is between the order and the member and not
between the member and the beneficiary, that the order
and the member can modify or change their contract in any
way satisfactory to themselves.    Delaney v. Delaney, 175
Ill. 196; State of Missouri ex rel. Joseph Schrempp v. Grand
Lodge of Missouri, A. O. U. W., 70 Mo. App. 456; Supreme
Lodge Knights of Pythias v. Knight, 117 Ind. 489, 20 N. E.
Rep. 479; Stohr v. San Francisco, etc., Soc., 82 Cal. 557, 22
Pac. Rep. 1125; Carnes v. Iowa Traveling Men's Ass'n, 76
N. W. Rep. 683; Loeffler v. Modern Woodmen (Wis.), 75
N. W. Rep. 1012; Dornes v. Knights of Pythias (Miss.), 23
So. Rep. 191.

This right to change the contract certainly exists where,
as in this case, the application for membership and the bene-
fit certificate reserve the right.    State of Missouri ex rel. v.
Grand Lodge A. O. U. W., 70 Mo. App. 456; Hughes v.
Wisconsin Odd Fellows' Mutual Life Insurance Co., 73 N.
W. Rep. 1015; Supreme Commander, etc., v. Ainsworth, 71
Ala. 449; Borgards v. Firemen's Mutual Ins. Co., 79 Mich.
440; Bacon on Mutual Benefit Societies (2d Ed.), Secs. 185–
188; Niblack on Mutual Ben. Societies (2d Ed.), Secs. 24–28;
American & English Encyclopedia of Law, 2d Ed., Vol. 3,
pages 1084–5–6.

In mutual benefit societies where, as in this case, the
law making, or supreme body, is made up of representatives
from subordinate bodies, the membership of such subordi-
nate bodies being represented by delegates elected by the
members, each member assents to, and is bound by the

laws enacted by such supreme body. Peet v. Knights of Maccabees of the World, 83 Mich. .92, 47 N. W. Rep. 119.

. The member is bound to take notice of the reserved right to amend, and when such amendment is made in accordance with the laws of the order, he and his beneficiary are bound thereby. Supreme Lodge Knights of Pythias v. Knight, 117 Ind. 489, 20 N. E. Rep. 479; Stohr v. San Francisco, etc., Soc., 82 Cal. 557, 22 Pac. Rep. 1125; State ex rel. v. Grand Lodge A. O. U. W., 70 Mo. App. 456.

The right of a mutual benefit society to amend its laws so as to provide for forfeiture of all benefits in case of suicide has been upheld by the courts. Supreme Commandéry, etc., v. Ainsworth, 71 Ala. 436; Supreme Lodge Knights of Pythias v. LaMalta (Tenn.), 31 S. W. Rep. 493; Daughtry v. Supreme Lodge Knights of Pythias, 48 La. Ann. 1203, 20 So. Rep. 712.

Other cases supporting the doctrine contended for are: Hobbs v. Ia. Ben. Ass'n, 82 Ia. 107, 47 N. W. Rep. 983; Courtney v. Association (Ia.), 53 N. W. Rep. 238; West v. Grand Lodge A. O. U. W. of Texas, 14 Tex. Civ. App. 471, 37 S. W. Rep. 966; Gooch v. Association, 109 Mass. 558; Grosvenor v. Society, 118 Mass. 78; Chamberlain v. Lincoln, 129 Mass. 70; Karcher v. Sup. Lodge, 137 Mass. 368; Hellenberg v. Independent Order, 94 N. Y. 580; Sabin v. Phinney (N. Y. App.), 31 N. E. Rep. 1087; Borgards v. Farmers, etc., Soc., 79 Mich. 440, 44 N. W. Rep. 856; Pepe v. City, etc., Bldg. Ass'n, 3 R. (Ch.) 47; Fugure v. Soc. St. Joseph, 46 Vt. 362–369; Poultney v. Bachman, 31 Hun, 49, 62 How. Pr. 466; St. Patrick, etc., Soc., v. Vey, 92 Pa. St. 510; Ellerbe v. Faust, 119 Mo. 653.

It seems to be the well settled law in this country that it is competent for an insurance company to exempt itself from all liability in the event that death results from suicide, by proper stipulations in the contract of insurance.

One of the leading cases on this subject is Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284, and another case, in which most of the American authorities are cited, is De Gogorza v. Knickerbocker Life Ins. Co., 65 N. Y. 234.

The amendment extending the time within which, if the member should die by suicide, all of his rights and those of his beneficiary should be void, is reasonable and well calculated to carry out the purposes and objects of the society.

This is a private, mutual corporation, and the members have a right to agree among themselves whether or not a particular rule is reasonable, if the same is not opposed to the law in the sense of being immoral or criminal, and the courts will give effect to it. Thompson on Corporations, Vol. 1, Sec. 1021.

The courts will not set aside a stipulation embodied in the law of society, unless the same is obviously unjust or illegal. Thompson on Corporations, Vol. 1, Sec. 1047.

In construing by-laws, courts will interpret them reasonably and avoid, if possible, calling them void. Bacon on Benefit Societies, Sec. 86.

IRWIN & EGAN, attorneys for appellee, contended that the contract of insurance between a mutual benefit association and one of its members will be as fully protected as if made with a stranger. The association can not, without the assent of such member, impose any new conditions affecting the contract to his injury. It can not, by a subsequent by-law, forfeit any of his rights under the contract. N. W. Benevolent & Mutual Aid Ass'n of Ill. v. Barbara Wanner, 24 Ill. App. 357.

In the case of Becker v. Berlin Benevolent Society, 144 Pa. St. 232, also cited in 22 Atl. Rep. 699, the argument that the plaintiff, being a member of the society, is bound by the by-laws, does not meet the difficulty. It may be a good by-law as to future cases, but at the time it was passed the plaintiff was something more than a member—he was a creditor whose rights had previously attached, and those rights can not be swept away by such a scheme as this by-law. To practically the same effect is Hobbs v. Iowa Mutual Benefit Association, 82 Iowa, 107; Wist v. Grand Lodge, etc., 22 Ore. 271.

The provisions of the charter and by-laws is a part of the

contract of insurance and can not be changed at the will of the company without the consent of the insured. Morrison v. Wisconsin Odd Fellows Mut. Life Ins. Co., 59 Wis. 162.

Existing by-laws are, in the cases of mutual insurance, very properly regarded as entering into the contract and binding its members, and open, therefore, to inquiry; but a contract once made with a member can not differ in its essence from one made with any one else, and he can not, without his consent, be brought into changed responsibilities which import new terms into the agreement itself. Whatever force new by-laws may possible have in regard to other matters, they can not be allowed to destroy express contract. To the same effect see May on Insurance, Sec. 552; Insurance v. Connor, 17 Pa. St. 136; Great Falls Mutual Ins. Co. v. Harvey, 45 N. H. 292; New Eng. Ins. Co. v. Butler, 34 Me. 451; Revere v. Boston Copper Co., 15 Pick. 363; American Bank v. Baker, 4 Metc. 176; Angell & Ames on Corporations, pp. 339–345.

Mr. Presiding Justice Dibell delivered the opinion of the court.

This is a suit upon a beneficiary certificate issued by appellant, a fraternal association. The declaration is sufficiently stated in 78 Ill. App. 162, to which we here refer. After that decision the cause was redocketed below. Defendant filed a plea of the general issue and with it a stipulation by the parties that defendant might introduce any matter of defense it desired to prove, as if specially pleaded. A jury was waived, the cause was submitted upon an agreed statement of facts, propositions of law were presented and ruled upon, and the court entered finding and judgment for plaintiff for $1,000. Defendant appeals.

Albert A. Hammers, husband of the plaintiff, on November 3, 1894, made written application to Elgin Tent No. 16, of the defendant society, for membership and for a benefit certificate for $1,000, payable to his wife, Addie Hammers. In the application, among other things, he made the follow-

ing agreements: "The laws of the Supreme Tent of the Knights of the Maccabees of the World, now in force, or that may hereafter be adopted, shall form the basis of this contract for beneficiary membership;" also, "I also agree that should I commit suicide within one year from the date of my admission into the order, whether sane or insane at the time, that this contract shall be null and void, of no binding force upon said Supreme Tent;" also, "This application and the laws of the Supreme Tent now in force or that may hereafter be adopted are made a part of the contract between myself and the Supreme Tent, and I for myself and my beneficiary or beneficiaries agree to conform to and be governed thereby." The application was accepted. Hammers became a member of the order November 21, 1894, and on January 2, 1895, the society issued and delivered to him a certificate of membership. It provided that at his death one assessment on the membership not exceeding $1,000 should be paid as a benefit to Addie Hammers, his wife, "provided he shall have in every particular complied with the laws of the order now in force or that may hereafter be adopted." At the time said Hammers became a member of the order a by-law was in force to the effect that no benefits should be paid to the beneficiary of a member if his death "was the result of suicide within one year after admission, whether the member so taking his own life was sane or insane at the time." Afterward the order in regular session duly amended its laws, and provided that no benefit should be paid to a beneficiary of a member when his "death was the result of suicide within five years after admission, whether the member taking his own life was sane or insane at the time;" that "in case of suicide within five years after admission all assessments paid to the Supreme Tent by such member shall be paid back to the beneficiary named in the certificate, and such amount shall be the full amount that can be claimed in such cases." This amendment went into force August 29, 1897. Hammers paid all assessments and dues required of him up to September 30, 1897, and paid $22 upon assessments. On September 30,

1897, he took his own life while temporarily insane. His widow made proofs of death. The society tendered to her $22, and refused to pay anything further. The defendant order is a mutual benefit association, and has a form of government in which all the members are represented, the subordinate organizations electing members to sit in the supreme body, which latter enacted the by-law in question.

A class of cases is found in the books where, in mutual insurance companies and mutual benefit societies, a by-law changing the liability has been passed after a member joined and received his policy and certificate, and where no right to amend has been in express terms reserved, and no agreement made that the transaction should be subject to amendments and changes thereafter enacted in the laws or by-laws. A difference of judicial opinion exists upon the question whether a prior policy or certificate is in such case affected by the subsequent legislation. To that question this court returned a negative answer in N. W. B. & M. A. Association v. Wanner, 24 Ill. App. 357; and we think that decision sustained by the greater weight of authority and the sounder reasons. But that is not the problem presented here. In the present case the member contracted in terms plain and unambiguous, that he and his beneficiary would be bound by the laws of the order which might afterward be enacted, that he would conform to all such later laws, and that all such subsequent enactments should enter into and be a part of the contract. It is clear a contract of this kind is wholly within the control of the member, and the beneficiary is subject to every stipulation to which the member agrees, both before and after the issue of the certificate. Bagley v. Grand Lodge A. O. U. W., 131 Ill. 498; Delaney v. Delaney, 175 Ill. 187.

The question submitted really is whether the member is bound by his contract. So far as the authorities have been brought to our attention, it seems to be universally held that such a contract, whereby a member agrees to be subject to the future general legislation of his order, is a valid agreement, not contrary to public policy, and that in case

of a contract containing such stipulations, the member and his beneficiary are bound by subsequent amendments and new laws, if they are not unreasonable; and by some courts the member and beneficiary are thus bound by later laws, if the right to amend is reserved in the constitution or laws in force when the certificate was issued, even if the subject is not referred to in the application or certificate. (Supreme Commandery, Knights of the Golden Rule, v. Ainsworth, 71 Ala. 436; Supreme Lodge, Knights of Pythias v. LaMalta, 95 Tenn. 157; Hughes v. Wisconsin Odd Fellows M. L. Ins. Co., 98 Wis. 292; State ex rel. v. Grand Lodge A. O. U. W., 70 Mo. App. 456; Daughtry v. Knights of Pythias, 48 La. Ann. 1203; Borgards v. Farmers Mutual Ins. Co., 79 Mich. 440; Supreme Lodge, Knights of Pythias, v. Knight, 117 Ind. 489; Hobbs v. Iowa M. B. Association, 82 Iowa, 107; West v. Grand Lodge A. O. U. W., 14 Texas Civil Appeals, 471; Stohr v. San Francisco M. F. Association, 82 Cal. 557; Fullenweider v. Supreme Council Royal League, 73 Ill. App. 321; Niblack on Benefit Societies, 2d Ed., Secs. 25, 26, 27.) In the cases cited to the contrary, either there was no such agreement to be bound by future laws, or the rights of the parties had ripened into a money demand before the change was made.

Was this a reasonable by-law? Our Supreme Court in Grand Lodge I. O. M. A. v. Wieting, 168 Ill. 408, held that where a beneficiary certificate was to be inoperative in case the member committed suicide, the term " suicide " in the contract would be interpreted to mean voluntary, intentional self-destruction, and that the certificate would not be forfeited by self-destruction while insane. The by-law here in question sought to avoid such a liability by making the benefits non-payable if the member took his own life, whether he was sane or insane at the time. Whether such a clause is valid and preserves the insurer from liability in all cases of self-destruction seems not to have been determined by our own Supreme Court. It has, however, been so held in Bigelow v. Berkshire Life Insurance Co., 93 U. S. 284, and De Gogorza v. Knickerbocker Life Insurance Co., 65 N. Y.

232. We see no reason why a company insuring lives may not, to avoid extra hazards, make such restrictions upon its liability as experience shows to be necessary, nor why mutual benefit societies may not do the same. The reasonableness of a by-law restricting or entirely excluding liability for death by self-destruction was considered and sustained in most of the cases cited in the preceding paragraph. In the Ainsworth case, *supra*, in discussing the reasonableness of an amendment similar to that involved in this case, the Supreme Court of Alabama said: " The fundamental principle of such organizations is the mutuality of duty and equality of rights of the membership, without regard to time of admission. This can not well be preserved if the members stipulating for benefits are not required to consent that they will be subject to future as well as existing by-laws. Time and experience will develop a necessity for changes in the laws, and if the consent was not required there would be a class of members bound by the changed laws and a class exempt from their operation. The case before us is an illustration. Of the legality and propriety of the provision relieving the association from liability if a member, while insane, deprives himself of life, there is no good reason to question. * * * If the law was applied only to certificates issued subsequent to its enactment there would be a class of members having certificates of greater value than the certificates held by another class; yet each class would be subject to the same assessments and the same duties. * * * It is the concurring assent of the parties that engrafts the law upon the certificate, giving it an operation it would not have otherwise." In conformity with the authorities we have cited we hold the by-law not against public policy, but a reasonable exercise of the power of amendment, and that under the stipulated facts it was enacted by representatives of the members and bound Hammers and his wife, and that she was only entitled to recover the $22 her husband paid in assessments.

Appellant asks that the judgment be reversed without remanding the cause. The stipulation says defendant

tendered $22, but does not show the money was paid into court for plaintiff or the tender in any other way kept good. Under the stipulation attached to the general issue this case stands as if a plea of tender of $22 had been filed. Where the tender is not brought into court, a plea of tender authorizes a judgment for plaintiff against defendant for the amount of the tender. Monroe v. Chaldeck, 78 Ill. 429; Sweetland v. Tuthill, 54 Ill. 215; Leonard v. Patton, 106 Ill. 99. As said in Beach v. Jeffery, 1 Ill. App. 283, "In this case it does not appear the money tendered was brought into court; hence it is not in the power of the court to order the money paid over to plaintiff; and hence under the admissions in the plea the court could do no less than render judgment for the amount admitted by the plea, and for costs." Accordingly the judgment is reversed and the cause remanded to the court below, with directions to enter judgment for plaintiff and against defendant for $22 and costs of suit. Reversed and remanded with directions.